UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| ANGELA YORK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case no. 2:15CV43 PLC |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Angela York ("Plaintiff") seeks review of the decision of the Social Security Commissioner, Carolyn Colvin, denying her applications for Disability Insurance Benefits under the Social Security Act.[1] Because the Court finds that substantial evidence supports the decision to deny benefits, the Court affirms the denial of Plaintiff's application.

### *I.  Background and Procedural History*

On July 3, 2012, Plaintiff filed an application for Disability Insurance Benefits alleging she was disabled as of May 1, 2012[2] as a result of fibromyalgia, blood clots, diabetes, and high blood pressure. (Tr. 58, 124-26). The Social Security Administration (SSA) denied Plaintiff's claims, and she filed a timely request for a hearing before an administrative law judge (ALJ). (Tr. 71-78, 82-83)

The SSA granted Plaintiff's request for review, and an ALJ conducted a hearing on December 12, 2013. (Tr. 30-57, 96-116). At the hearing, Plaintiff testified that she was thirty-

---

[1] The parties consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF No. 11).
[2] Plaintiff originally claimed that her date of onset was December 27, 2011, but she amended the alleged onset date at the ALJ hearing. (Tr. 36). Although the ALJ's decision referred to the December 2011 date as the alleged date of onset, Plaintiff does not allege error.

1

one years of age, five feet and seven inches tall, and weighed 290 pounds. (Tr. 23, 50). She explained that she was unable to work because she suffered "fibromyalgia and it affects my back and my hips. I have a history of blood clots, which I have lot of swelling in my leg when I sit or stand for very long periods. I just found out not too long ago I have hepatitis C. I have diabetes. . . . I'm just tired a lot. . . ." (Tr. 36). Plaintiff explained that "standing or sitting for very long periods of time" caused her leg to swell, and she had to "get up and move it around" or "sit down and take breaks." (Tr. 37-38). Plaintiff stated she generally elevated her leg "probably three to four hours" between the hours of 9:00 a.m. and 5:00 p.m. (Tr. 39). Plaintiff testified that she experienced pain, numbness, and tingling in her hands for about four hours every morning. (Tr. 40-41).

Plaintiff stated that she controlled her diabetes with "four shots a day," Metformin, and "the diabetes diet." (Tr. 42). Plaintiff also took Oxycodone, Savella, Lasix, and Xanax for her other conditions. (Tr. 44-45). Plaintiff believed the diabetes caused her fatigue, and she usually took two forty-five-minute naps per day. (Tr. 43-44). Plaintiff testified that she was capable of: sitting or standing for forty to forty-five minutes; walking approximately one block; and lifting or carrying ten to fifteen pounds. (Tr. 46). Plaintiff stated that she was able to do buttons and zippers, but she could not reach or bend over. (Tr. 46-47). Plaintiff helped her mother with cooking and cleaning, but needed assistance grocery shopping and, occasionally, getting in and out of the bath tub. (Tr. 49).

A vocational expert (VE) also testified at the hearing. (Tr. 50-56). The ALJ asked the VE to consider a hypothetical individual of Plaintiff's age, education, and work experience, and the ability to "lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently; could stand and walk a total of six hours out of an eight-hour day; sit six hours out of an eight-hour

day; cannot climb ladders, ropes or scaffolds; cannot work at unprotected heights or around hazards. All other postural activities can be performed on an occasional basis." (Tr. 51). The VE testified that such a person could perform Plaintiff's previous jobs as a fast food worker, cashier, and short-order cook, but not as a home healthcare aide. (Tr. 52). When the ALJ asked the VE "what other kinds of jobs might be available?," the VE identified the jobs of cashier II, wire wrapping machine operator, and bench assembler. (Tr. 52).

In a decision dated January 30, 2014, the ALJ applied the five-step evaluation process set forth in 20 C.F.R. § 404.1520[3] and found that Plaintiff "has not been under a disability within the meaning of the Social Security Act from December 27, 2011, through the date of this decision." (Tr. 18-25). The ALJ found that Plaintiff, who was age twenty-nine on the alleged date of onset, had the severe impairments of fibromyalgia syndrome, obesity, diabetes mellitus, and history of deep vein thrombosis, and the non-severe impairments of high blood pressure, hepatitis C, toe fractures, and anxiety. (Tr. 20).

After reviewing Plaintiff's testimony and medical records, the ALJ determined that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible[.]" (Tr. 23). The ALJ found that Plaintiff had the residual functional capacity (RFC) to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), including the ability to lift, carry, push and pull up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk for 6 hours in an 8 hour workday, and sit for 6 hours in an 8 hour workday. The claimant cannot climb ladders,

---

[3] To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. See 20 C.F.R. §§ 404.1520. Those steps require a claimant to show that he or she: (1) is not engaged in substantial gainful activity; (2) has a severe impairment or combination of impairments which significantly limits his or her physical or mental ability to do basic work activities or (3) has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) is unable to return to his or her past relevant work; and (5) the impairments prevent him or her from doing any other work. Id.

> ropes or scaffolds, be at unprotected heights or be around hazards. She can perform all other postural activities occasionally.

(Tr. 21-22). Based on the testimony of a vocational expert, the ALJ concluded that Plaintiff was capable of performing past relevant work as a convenience store cashier and fast food worker. (Tr. 24). The ALJ further stated: "Although the claimant is capable of performing past relevant work, there are other jobs existing in the national economy that she is also able to perform." (Id.).

Plaintiff filed a request for review of the ALJ's decision with the SSA Appeals Council, which denied review on April 15, 2015. (Tr. 7-14, 1-6). Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the SSA's final decision. Sims v. Apfel, 530 U.S. 103, 106-07 (2000).

## II.    Standard of Review

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.'" Cruze v. Chater, 85 F.3d 1320, 1323 (8th Cir. 1996) (quoting Boerst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993)). In determining whether the evidence is substantial, a court considers evidence that both supports and detracts from the Commissioner's decision. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). However, a court "do[es] not reweigh the evidence presented to the ALJ and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reason and substantial evidence." Renstrue v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006)).

4

"If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Partee v. Astrue, 638 F.3d 860, 863 (8th Cir. 2011) (quoting Goff v. Barnhart, 421 F.3d 785, 789 (8th Cir. 2005)). The Eighth Circuit has repeatedly held that a court should "defer heavily to the findings and conclusions" of the Social Security Administration. Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010); Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001).

### III. *Discussion*

Plaintiff claims that substantial evidence does not support the ALJ's determination that she is not disabled. Plaintiff asserts that the ALJ erred in: (1) finding that Plaintiff performed past relevant work at the substantial gainful activity level; (2) improperly weighing the medical opinion evidence when formulating Plaintiff's RFC; and (3) finding that Plaintiff's allegations of disability were not entirely credible. (ECF No. 16). The Commissioner counters that the ALJ properly evaluated the medical opinion evidence and Plaintiff's credibility and found that Plaintiff could perform jobs existing in significant number in the national economy. (ECF No. 17).

*A. Past relevant work*

Plaintiff first argues that the ALJ's decision at step four was not supported by substantial evidence because Plaintiff's earnings records "do not show [she] performed the identified past work at the substantial gainful activity level" and, as a result, those jobs do not constitute "past relevant work" as defined by 20 CFR. § 404.1560(b)(1). (ECF No. 16 at 7). In response, the Commissioner asserts that "[e]ven if those jobs did not amount to past relevant work,…the ALJ

5

found in the alternative that Plaintiff could perform other jobs existing in significant numbers in the national economy." (ECF No. 17 at 14).

The Commissioner has established a five-step sequential evaluation process to determine whether claimants are eligible for Social Security disability benefits. Rater v. Chater, 73 F.3d 796, 798 (8th Cir. 1996). "At step four, the ALJ must determine whether or not the claimant is able to return to his or her past relevant work." Id. The Social Security regulations define "past relevant work" as "work experience [that] was done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity."[4] 20 CFR § 404.1565(a). "A claimant's earnings 'will ordinarily show' that a claimant has engaged in substantial gainful activity if the 'earnings averaged…more than $500 a month in calendar years after 1989.'" Reeder v. Apfel, 214 F.3d 984, 989 (8th Cir. 2000) (quoting 20 CFR § 404.1574(b)(2)(vii))). "Although earnings below the guidelines will 'ordinarily' show that an employee has not engaged in substantial gainful activity, earnings below the guidelines will not conclusively show that an employee has not engaged in substantial gainful activity." Id. (quoting Pickner v. Sullivan, 985 F.2d 401, 403 (8th Cir. 1993)).

In this case, Plaintiff reported that she worked as an in-home healthcare aide for her parents from November 2006 through December 2011 and as a cook at McDonalds from October 2011 through December 2011. (Tr. 159-66). In 2005, Plaintiff worked as a cashier and made pizzas at Casey's. (Tr. 35, 144). At the hearing, the VE testified that an individual with Plaintiff's RFC could perform Plaintiff's past work as a fast food worker, cashier, and short-

---

[4] The regulations provide that "substantial gainful activity is work activity that is both substantial and gainful." 20 CFR § 404.1572. "Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 CFR § 404.1572(a). "Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." 20 CFR § 404.1572(b).

order cook, but not as a home healthcare aide. (Tr. 52). When the ALJ asked the VE "what other kinds of jobs might be available?," the VE identified the jobs of cashier II, wire wrapping machine operator, and bench assembler. (Tr. 52).

In his decision, the ALJ found at step four of the sequential evaluation process that Plaintiff could perform her past relevant work as a fast food worker, convenience store cashier, and short-order cook. (Tr. 24). The ALJ did not refer to the applicable guidelines for determining whether Plaintiff's past work constituted substantial gainful activity. However, the ALJ did not end his analysis at step four, but rather proceeded to step five to consider whether Plaintiff was capable of performing other jobs. (Id.). The ALJ wrote: "Although the claimant is capable of performing past relevant work, there are other jobs existing in the national economy that she is also able to perform." The ALJ therefore made "alternative findings for step five of the sequential evaluation" and concluded: "[C]onsidering the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the claimant can also perform[.]" (Id.).

The Court need not determine whether Plaintiff's past work as a fast food worker, cashier, or short-order cook constituted "past relevant work" for purposes of 20 CFR § 404.1565(a). Even if Plaintiff's earnings were below the guidelines, any error in considering those jobs past relevant work was harmless. Because the record showed and the ALJ found that Plaintiff was capable of performing other jobs in the national economy, the ALJ properly determined that Plaintiff was not disabled.

*B. Medical opinion evidence*

In her second argument, Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence because the ALJ improperly weighed the medical opinion

evidence. (ECF No. 16). More specifically, Plaintiff claims the ALJ assigned too little weight to the opinion of Plaintiff's treating physician and too much weight to that of the consulting physicians. The Commissioner counters that the ALJ properly weighed the medical opinion evidence when determining Plaintiff's RFC. (ECF No. 17).

In determining a claimant's RFC, the ALJ is required to consider the medical opinion evidence of record together with the other relevant evidence. 20 C.F.R. § 404.1527(b). A treating source's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record." Tilley v. Astrue, 580 F.3d 675, 679 (8th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)). The ALJ may discount a treating physician's opinion if it is inconsistent with the physician's treatment notes or with the record as a whole. See Halverson v. Astrue, 600 F.3d 922, 929-30 (8th Cir. 2010). In weighing a treating source opinion, it is the ALJ's duty to resolve conflicts in the evidence, and the ALJ's finding in that regard should not be disturbed so long as it falls within the "available zone of choice." Hacker v. Barnhart, 459 F.3d 934, 936 (8th Cir. 2006).

Unless the ALJ assigns controlling weight to a treating physician's opinion, the ALJ must explain the weight given to every medical opinion of record, regardless of its source. See 20 C.F.R. §§ 404.1527(c), (e)(2)(ii). When determining the appropriate amount of weight to give a medical opinion from a non-treating source, the ALJ considers the following factors: examining relationship, treatment relationship, supportability, consistency, and specialization. Wiese v. Astrue, 552 F.3d 728, 731 (8th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)).

1. *Dr. Dymek*

In this case, Dr. Alex Dymek, Plaintiff's primary care physician completed four RFC questionnaires. (Tr. 359-65, 375-76, 416-17, 496-97). In all of the RFC questionnaires, Dr. Dymek stated that Plaintiff suffered back and leg pain, fatigue, and edema and needed to "recline or lie down during a hypothetical 8-hour workday in excess of the typical 15-minute break in the morning, the 30-60 minute lunch, and the typical 15-minute break in the afternoon." (Id.). In the RFC questionnaire dated August 16, 2012, Dr. Dymek wrote that Plaintiff's symptoms were constant and included "pain back, shoulders, legs, fatigue, edema left leg from DVT." (Tr. 359). Dr. Dymek opined that Plaintiff: could not walk a single city block without rest or significant pain; could sit, stand, or walk for twenty minutes at a time; could sit, stand, or walk one hour in an eight-hour work day; required ten- to fifteen-minute breaks every fifteen to twenty minutes; could occasionally carry less than ten pounds and never carry ten pounds or more; could handle, finger, or reach 20% of the time during an eight-hour work day; and would be absent from work at least four days per month. (Tr. 359-60).

In an RFC questionnaire dated January 22, 2013, Dr. Dymek opined that Plaintiff could sit sixty minutes at a time and four hours in an eight-hour workday; stand or walk thirty minutes at a time and four hours in an eight-hour workday; required fifteen-minute breaks hourly; could use her hands 50% and her fingers and arms 10% of the time during an eight-hour workday; and would likely be absent from work once or twice a month. (Tr. 375-76). On April 23, 2013, Dr. Dymek completed another RFC questionnaire in which he stated that Plaintiff: could not walk one city block; could sit, stand or walk five minutes at a time and zero hours in an eight-hour workday; and would likely be absent from work once or twice a month. (Tr. 416-17). In an RFC dated October 30, 2013, Dr. Dymek wrote that Plaintiff could sit sixty minutes at a time and four

9

hours in an eight-hour workday and stand or walk thirty minutes at a time or four hours in an eight-hour workday. (Tr. 496-97).

In his decision, the ALJ gave "little weight to the opinion of Dr. Dymek in multiple RFC questionnaires[.]" (Id.). The ALJ explained that Dr. Dymek's opinions as communicated in the four RFC questionnaires were "inconsistent with one another and significantly inconsistent with his own treatment notes indicating essentially normal physical examinations with normal range of motion of joints and gait." (Tr. 23). The ALJ further stated:

> There is nothing in the record that suggests that [Plaintiff] cannot be on her feet for up to 6 hours in an 8 hour day. Further, the claimant testified that she could sit for 45 minutes at a time and stand for 45 minutes at a time, which is inconsistent with Dr. Dymek's reports. She has not had any recent occurrences of deep vein thrombosis and fibromyalgia has not been confirmed as a diagnosis.

(Id.). The Court finds that the ALJ provided good reasons, supported by substantial evidence, for assigning little weight to Dr. Dymek's opinion.

Plaintiff acknowledges that Dr. Dymek "provided multiple opinions expressing varying degrees of exertional and non-exertional limitations." (ECF No. 16 at 12). However, Plaintiff maintains the ALJ erred to the extent he disregarded Dr. Dymek's opinion that Plaintiff required a sit/stand requirement and/or leg elevation limitations because this limitation was consistent with his treatment notes and consistently included in the RFC questionnaires.

Although Dr. Dymek consistently included sit/stand and leg elevation requirements in the RFC questionnaires, these limitations are not consistent with his treatment notes. See Hacker, 459 F.3d at 937. Plaintiff's medical records reveal that she received treatment for edema and DVT in her left calf in January, March, and June 2011. (Tr. 229, 225, 222, 302, 321, 315). In treatment notes dated September 12, 2011, Dr. Dymek noted left leg swelling, but a venous Doppler scan of Plaintiff's left leg on September 13, 2011, stated: "No evidence of deep vein

thrombosis. The previously reported DVTs seen June 22, 2011 have resolved." (Tr. 203, 217-18). After Plaintiff's office visit of October 17, 2017, in which Dr. Dymek noted left leg swelling, there was no further mention of leg issues until February 2012. (Tr. 216, 270). On February 19, 2012, Plaintiff presented to the emergency room with complaints of left leg swelling and received a Lovenox injection. (Tr. 270-73). When Plaintiff reported to Dr. Cubine for a cough on May 11, 2012, Dr. Cubine noted "no edema," and a venous Doppler scan on July 25, 2012 showed no DVT. (Tr. 211, 255).

Plaintiff reported difficulties with leg swelling to Dr. Dymek on October 13 and 25, 2012, and he prescribed Lasix for water retention. (Tr. 393-94). On November 12, 2012, when Plaintiff visited Dr. Dymek for an upper respiratory infection, he noted leg edema and refilled her Lasix prescription. (Tr. 386-87). Dr. Dymek noted no edema in his treatment notes of: January 12, 2013; April 18, 2013; July 10, 2013; July 30, 2013; and September 9, 2013. (Tr. 378-79, 486-87, 483-85, 481-82, 470-72). Dr. Dymek's notes of September 30, 2013 and October 8, 2013 contained no reference to swelling or edema. (Tr. 464-65, 461-62).

Having reviewed the record and the ALJ's reasoning, the Court cannot say that the ALJ's decision to assign Dr. Dymek's opinion little weight lies outside the "available zone of choice." See Hacker, 459 F.3d at 937 ("A treating physician's own inconsistency may… undermine his opinion and diminish or eliminate the weight given his opinions."). Dr. Dymek's treatment notes contain no references to Plaintiff's ability to sit or stand or need to elevate her leg. Further, the medical records reveal that Plaintiff did not complain of leg swelling or DVT between November 12, 2012 and the hearing in December 2013. The Court therefore concludes that the ALJ did not err in finding that the limitations imposed by Dr. Dymek were inconsistent with his own treatment notes. The ALJ's finding that Dr. Dymek's treatment records were inconsistent with

the severe limitations set forth in the RFC questionnaires was a permissible reason to assign Dr. Dymek's opinion little weight. See Davidson v. Astrue, 578 F.3d 838, 843 (8th Cir. 2009) ("It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes.").

### 2. *Drs. Trowbridge and Velez*

Plaintiff next argues that the ALJ erred in weighing the medical opinions of Drs. Trowbridge and Velez. Dr. Denise Trowbridge, a state agency consultant, reviewed Plaintiff's medical records and completed a physical RFC assessment for Plaintiff on November 17, 2012. (Tr. 63-67). Dr. Trowbridge found that Plaintiff had the following exertional limitations: occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand and/or walk about six hours in an eight-hour workday; and sit about six hours in an eight-hour workday. (Tr. 64). Dr. Trowbridge explained that, although Dr. Dymek attributed Plaintiff's back pain to fibromyalgia, "[i]t does not appear she has the other symptoms associated with full [fibromyalgia] syndrome." (Id.). In regard to postural limitations, Dr. Trowbridge determined that Plaintiff could: occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl. (Tr. 64). Dr. Trowbridge found that plaintiff had no manipulative, visual, or communicative limitations. (Tr. 65).

Dr. Trowbridge disagreed with Dr. Dymek's RFC assessment of August 2012. (Tr. 65-66). She explained: "[T]he need to alternate positions, limit use of the [upper extremities] and limit sitting time are not supported by his notes. His notes indicate the claimant was in no distress on his exam. There is no mention of difficulty sitting in his file. He does not describe full [fibromyalgia] syndrome in his notes, just pain + trigger points." (Tr. 65). Dr. Trowbridge believed that Dr. Dymek's opinion was more restrictive than her findings because he "relie[d]

12

heavily on the subjective report of symptoms and limitations provided by the individual[.]" (Tr. 66).

Dr. Dennis Velez, reviewed Plaintiff's medical records and completed a consultative examination for Plaintiff on August 25, 2012. (Tr. 361-65). Dr. Velez observed that Plaintiff's heart and lungs were normal, her stance and gait were normal, and she had "full strength in both the upper and lower extremities," normal sensory examination, and negative straight leg raise in both the supine and sitting positions. (Tr. 362-63). In regard to Plaintiff's musculoskeletal condition, Dr. Velez wrote:

> The claimant's joint examination reveals no swelling, erythema, effusion, crepitus, or any type of hand or finger deformity. The claimant could actually write without difficulties and her writing was clear. The claimant could get up and down from the exam table as well as she could do tandem walking as heel and tiptoe walking without any difficulties. The claimant could bend down and touch her toes and had normal rhythm on extension of lumbar spine.

(Tr. 363).

Dr. Velez wrote that, because Plaintiff "had tender points at 9 out of the 18 points," her diagnosis of fibromyalgia "could not be substantiated." (Tr. 364). Although Plaintiff informed him that she suffered a Factor V Leiden deficiency, Dr. Velez's examination revealed "no lower or upper extremity swelling and had a negative Homan's sign." (Id.). Finally, Dr. Velez found that Plaintiff's diabetes "appears to be well controlled" and "[a]ll medical conditions are stable." (Id.). Dr. Velez concluded: "[Plaintiff] does not appear to have any limitation in sitting, standing, walking, manipulative limitations, verbal or written communication problems or lifting or carrying limitations." (Tr. 364).

In his decision, the ALJ assigned "some weight to the opinions of the consultative physician [Dr. Velez] and the State agency physician [Dr. Trowbridge] because they are

consistent with the claimant's treatment notes, the physical examination of record, and the objective testing in the record." (Tr. 23). Plaintiff contends that Dr. Velez's opinion did not support the ALJ's RFC and that the ALJ relied too heavily upon Dr. Trowbridge's opinion.

The opinion of a consulting doctor alone generally does not constitute substantial evidence. Krogmeier v. Barnhart, 294 F.3d 1019, 1024 (8th Cir. 2002). However, the ALJ can decide to give weight to a consultant opinion if it is supported by the ALJ's "independent review of the medical evidence." Id. (citing Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995)).

Notably, the ALJ gave "some weight" to the opinions of Drs. Velez and Trowbridge. He did not rely solely upon the opinions of the consulting doctors when determining the severity of Plaintiff's impairments and formulating the RFC. Rather, the ALJ considered the record as a whole, including those portions of Dr. Dymek's opinions that were consistent with the opinions of these consulting sources.

The ALJ did not, as Plaintiff argues, simply adopt Dr. Trowbridge's RFC determination. An RFC determination "is based on all the evidence in the record, including 'the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Krogmeier, 294 F.3d at 1024 (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Here, the ALJ considered the medical records, medical opinion evidence, Plaintiff's work history, and Plaintiff's testimony regarding her daily activities in determining Plaintiff's RFC. Thus, there is substantial evidence in the record to support the ALJ's decision.

*C. Credibility*

In her final argument, Plaintiff claims the ALJ's credibility determination is not supported by substantial evidence. (ECF No. 16). More specifically, Plaintiff asserts the ALJ improperly considered evidence of her work history, noncompliance with doctors'

recommendations, and activities of daily living. In response, the Commissioner argues that substantial evidence supported the ALJ's credibility determination.

Before determining a claimant's RFC, the ALJ must evaluate the credibility of the claimant's subjective complaints. Wagner v. Astrue, 499 F.3d 842, 851 (8th Cir. 2007) (citing Pearsall, 274 F.3d at 1218). Although an ALJ "may not discount a claimant's allegations of disabling pain solely because the objective medical evidence does not fully support them[,] . . . the ALJ may disbelieve subjective complaints if there are inconsistencies in the evidence as a whole." Goff, 421 F.3d at 792 (internal citations and quotations omitted). "We defer to the ALJ's evaluation of [a claimant's] credibility, provided that such determination is supported by good reasons and substantial evidence, even if every factor is not discussed in depth." Smith v. Colvin, 756 F.3d 621, 625 (8th Cir. 2014) (internal quotations and citations omitted).

The ALJ cited the results of objective medical testing, as well as the clinical signs and findings, as grounds for discrediting Plaintiff's subjective allegations. (Tr. 22-23). A lack of objective medical findings to support the degree of subjective complaints is an important factor in evaluating a claimant's credibility. Russell v. Sullivan, 950 F.2d 542, 545 (8th Cir. 1991). For example, the ALJ noted that Plaintiff testified "that her diabetes is controlled by four injections a day, Metformin, and following a diet." (Tr. 22). The ALJ also explained that Dr. Velez's consulting examination was "essentially normal, except she had 9 out of 18 tender points, which is not enough for a fibromyalgia diagnosis." (Tr. 22). Additionally, the ALJ wrote: "[T]reatment notes by Dr. Dymek indicate several normal physical examinations, with full range of motion of the spine, unlabored breathing, no effusions, instability, edema or limited range of motion of the extremities and a normal gait." (Id.).

In assessing Plaintiff's credibility, the ALJ also found that Plaintiff's "fair work history" suggested that she had "low motivation to work" and undermined her credibility. (Tr. 22). "A lack of work history may indicate a lack of motivation to work rather than a lack of ability." Pearsall, 274 F.3d at 1218. Although, as Plaintiff argues in her brief, she earned more than $10,000 per year between 2006 and 2011 providing in-home care for her parents, the record shows that her annual earnings from 1999 through 2005 never exceeded $4,000. (Tr. 141-46).

Additionally, the ALJ considered Plaintiff's noncompliance with her healthcare providers' recommendations to follow the recommended diet, exercise, lose weight, and cease smoking. (Tr. 23). "A failure to follow a recommended course of treatment…weighs against a claimant's credibility." Guilliams v. Barnhart, 393 F.3d 798, 802 (8th Cir. 2005). Furthermore, a claimant's noncompliance with a prescribed diet regimen may negatively affect his or her credibility. See Wildman v. Astrue, 596 F.3d 959, 966 (8th Cir. 2010).

The ALJ noted that Plaintiff was noncompliant with her treatment for diabetes. (Tr. 23). Additionally, he wrote: "[H]er doctor has advised her to quit smoking, to exercise regularly and to watch her diet, yet the evidence does not indicate that the claimant has followed her doctor's advice." (Id.). The ALJ concluded: "The claimant's failure to follow prescribed medical treatment is inconsistent with complaints of disabling pain and symptoms." (Id.).

Plaintiff argues the ALJ erred in discounting her credibility based on her failure to follow recommendations for smoking cessation, diet, or exercise because this advice did not constitute treatment. (ECF No. 16 at 14). In support of her argument, Plaintiff cites an SSA ruling relating to consideration of obesity as an impairment in the five-step sequential evaluation. See SSR 02-1P, 2002 WL 34686281, *9 (Sept. 12, 2002). Contrary to Plaintiff's argument, use of noncompliance for credibility purposes is not inconsistent with the restrictions of SSR 02-1P.

16

That SSA ruling applies only to consideration of the "failure to follow prescribed treatment for obesity" when making the determination to deny or cease benefits, and not when making credibility determinations.[5] Id.

Finally, the ALJ found that Plaintiff's daily activities, as reported in her adult function report, undermined her testimony that she required assistance in cooking, cleaning, and shopping. (Tr. 23). The ALJ stated that, in her function report, Plaintiff wrote "that she fixes meals, cares for her personal hygiene, cares for her two children [ages 15 and 10], does laundry daily, drives, shops for food and clothes, and goes fishing on a weekly basis." (Id.). While a claimant "need not prove she is bedridden or completely helpless to be found disabled," Reed v. Barnhart, 399 F.3d 917, 923 (8th Cir. 2005) (internal quotation marks omitted), Plaintiff's daily activities may nonetheless be considered in assessing the credibility of her complaints. See Wagner, 499 F.3d at 852-53.

The court finds that the ALJ considered Plaintiff's subjective complaints on the basis of the entire record and set out a number of inconsistencies that detracted from her credibility. Because the ALJ's determination not to credit Plaintiff's subjective complaints is supported by "good reasons and substantial evidence," the Court defers to his determination. See Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006).

### III. Conclusion

For the reasons discussed above, the Court finds that substantial evidence in the record as a whole supports the Commissioner's decision that Plaintiff is not disabled. Accordingly,

---

[5] Plaintiff also challenges the ALJ's finding that she was noncompliant with her diabetes treatment. Plaintiff argues: "There is no evidence showing diabetic non-compliance after the amended onset date [of December 27, 2011.]" (ECF No. 16 at 13). However, on November 29, 2012, Plaintiff's primary care provider, Dr. Dymek, wrote that Plaintiff's suffered "diabetes mellitus type II that unfortunately is poorly controlled due to lack of proper treatment." (Tr. 373).

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying Social Security benefits to Plaintiff is **AFFIRMED.**

A separate judgment in accordance with this Memorandum and Order is entered this date.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 4th day of January, 2017

.